IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL SACKIE, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | No. 2:02-CV-03705-JCJ |
| | : | |
| HONORABLE TOM RIDGE, | : | |
| SECRETARY, DEPARTMENT OF | : | |
| HOMELAND SECURITY, | : | |
|     Respondent[1] | : | |
| | : | |

GOVERNMENT'S RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS

I. INTRODUCTION

This is an alien habeas corpus case. The petitioner, a criminal alien, is challenging his final order of removal.[2]

Petitioner Randall Sackie ("Sackie") is a native and citizen of Liberia through birth there on August 16,

_____

[1]    Secretary Ridge is substituted for Attorney General Ashcroft pursuant to Fed.R.Civ.P. 25(d)(1).

[2]    Petitioner filed this petition on June 11, 2002. At that time Sackie was still litigating his removal in the immigration courts. The order was final on February 7, 2003 when the Board of Immigration Appeals (BIA) issued its final decision (the BIA's order is attached to Sackie's March 10, 2003 filing as Exhibit 2A).

-1-

1974. He entered the United States at New York, New York on May 19, 1995, and was admitted for permanent residence, apparently based on a petition from a parent who had acquired United States citizenship.

Sackie acquired a series of convictions for theft offenses and lying to the police in Bucks County, and in the states of Minnesota and Ohio.

On July 21, 2000 the Philadelphia office of the Immigration & Naturalization Service (INS) commenced removal proceedings against Sackie by the issuance of a Notice To Appear or "NTA." The NTA alleged that Sackie was deportable because he had been convicted of crimes involving moral turpitude ("CIMT"), and convicted of an aggravated felony. An alien convicted of CIMTs or an aggravated felony after admission is deportable; 8 U.S.C. § 1227(a)(2)(A)(i), (ii) (CIMTS); 8 U.S.C. § 1227(a)(2)(A)(iii)(aggravated felony).

In a hearing before an Immigration Judge, Sackie argued that he was entitled to asylum and withholding of removal because he had been a terrorist in Liberia, associated with the Prince Johnson faction in the interminable internecine warfare that ravages that country. Indeed, Sackie boasted that he had witnessed the execution

-2-

of Samuel Doe, the erstwhile leader of the other principal faction of murderers. The Immigration Judge (IJ) found him "completely credible."

In sworn testimony before the IJ, Sackie admitted to killing some of his fellow Liberians, unarmed civilians all (about 10, so far as he could recall) and torturing others (perhaps 25), but attempted to exculpate his conduct by swearing that he had been "drafted" into the forces of the Prince Johnson faction. In addition to the asylum and withholding claims, Sackie appropriately enough applied to the IJ for deferral of removal under the United Nations Convention Against Torture ("CAT").[3] His CAT claim was that he himself might be tortured if returned to Liberia.

Despite his criminal convictions, on April 26,

---

[3]    Asylum and withholding are forms of statutory relief from deportation, based on a determination that the alien would be persecuted if returned to his home country. See 8 U.S.C. § 1158(asylum); 8 U.S.C. § 1231(b)(3)(withholding). CAT relief is akin to withholding, and is authorized by regulations; see 8 CFR § 208.17. While Sackie has been denied all relief so far, he does not raise this issue in his petition, and the government will not address these schemes in detail. Concise explanations of asylum, withholding and CAT withholding are contained in Abdulai v. Ashcroft, 239 F.3d 542, 545-46 (3d Cir. 2001) and Sevoian v. Ashcroft, 290 F.3d 166, 172 (3d Cir. 2002).

-3-

2001 the IJ granted Sackie's asylum and withholding
applications, and terminated the removal case. (The IJ did
not reach Sackie's Torture Convention claim, probably
concluding that it was unnecessary). The INS appealed the
grants to the Board of Immigration Appeals (BIA).

On April 1, 2002 the BIA reversed the grant of
asylum and withholding, but remanded the case to the IJ for
consideration of the CAT claim. (The BIA's April 1, 2002
decision is attached as Exhibit 1).

On October 3, 2002 another IJ (Judge Sease) denied
all forms of relief, including relief under the CAT, and
ordered Sackie removed. Sackie appealed that decision to the
BIA on October 23, 2002. See 8 CFR § 240.15 (providing for
appeal to BIA of order of IJ). (Judge Sease's order is
attached as Exhibit 2).

While that appeal was pending, Sackie filed the
instant habeas petition. The government's position is that
the Court has habeas jurisdiction to review only "final"
orders of removal; Calcano-Martinez v. INS, 232 F.3d 328,
342-43 (2d Cir. 2000), aff'd, 533 U.S. 348, 121 S.Ct. 2268,
150 L.Ed.2d 392 (2001); cf. Gao v. Ashcroft, 299 F.3d 266,
271 (3d Cir. 2002) ("We begin by noting that we have the

-4-

power to review only the final order of removal" <u>citing</u> 8
U.S.C. § 1252(a)(1)).

On February 7, 2003 the Board of Immigration
Appeals adopted Immigration Judge Sease's written opinion
denying Sackie deferral of removal under the Torture
Convention. As noted in the margin, Sackie's order then
became "final" for habeas purposes. <u>See</u> 8 U.S.C.
§ 1101(a)(47)(B) (defining final order). (The BIA's final
order dated February 7, 2003 is attached as Exhibit 3.)

II. <u>ARGUMENT</u>

    A.   The Attorney General Properly Denied
        Sackie Refugee Status Because Petitioner
        Failed To Establish That He Is Within The
        Definition Of "Refugee" at 8 U.S.C.
        <u>§ 1101(a)(42)(B)</u>

Sackie's argument in his interlocutory petition
and his latest filing is that he is entitled to asylum (8
U.S.C. § 1158), withholding of removal under 8 U.S.C.
§ 1231(b)(3), and withholding of removal under the Torture
Convention. The government will address asylum and statutory
withholding first, and then the Torture Convention claim.

Section 208 of the Immigration & Nationality Act
(INA) gives the Attorney General (and now, presumably, the
Secretary of Homeland Security, although that is not clear)

-5-

discretion to grant asylum to a deportable alien. 8 U.S.C. §
1158(a). However, that discretion can only be exercised if
the applicant qualifies as a "refugee." Id.  A "refugee" is
defined as:

> [A]ny person who is outside any country
> of such person's nationality or, in the
> case of a person having no nationality,
> is outside of any country in which such
> person last habitually resided, and who
> is unable or unwilling to avail himself
> or herself of the protection of that
> country because of persecution or a
> well-founded fear of persecution on
> account of race, religion, nationality,
> membership in a particular social group,
> or political opinion.

8 U.S.C. § 1101(a)(42)(A).

The asylum applicant must show that the alleged
persecution might result "on account of" one of the five
protected classifications in order to establish eligibility
for asylum. INS v. Elias-Zacarias, 502 U.S. 478, 112 S.Ct.
812, 117 L.Ed.2d 38 (1992).

Withholding of deportation is closely related to
asylum, in that it is predicated on the "refugee" factors in
8 U.S.C. § 1101(a)(42). Withholding differs from asylum in
that it is mandatory if the alien demonstrates an objective
probability of persecution. Section 1231(b)(3) says that the
"Attorney General shall not deport or return an alien ... to

a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b). To prevail on an application for withholding of deportation, the alien must establish a "clear probability" that his life or freedom would be threatened if he were removed to his homeland. "Clear probability" means that it is "more likely than not" that an alien would be subject to persecution. INS v. Stevic, 467 U.S. 407, 429-30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1987). The "clear probability" standard is objective, and a higher standard than the "well-founded fear" standard for asylum. Caran v. Ashcroft, 55 Fed.Appx. 601, *602, 2003 WL 152847, **1 (3rd Cir. Jan. 21, 2003). Accordingly, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, the withholding of deportation application fails as well.

The long and short of Sackie's refugee claim is that he was a combatant on one side of Liberia's civil war between the Samuel Doe faction and the Prince Johnson factions. These factions evidently are not based on

-7-

religion, tribal affiliation or any of the other "refugee" predicates listed in § 1101(a)(42). Thus, the IJ found that Sackie had not established that he fell within the definition of "refugee" and that he was ineligible for asylum or statutory withholding.[4]

The Convention Against Torture claim is separate from the claims for asylum and withholding of removal and is analyzed differently. See <u>Kamalthas v. INS</u>, 251 F.3d 1279, 1284 (9th Cir. 2001). The Convention provides in Article 3 that:

> 1. No State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.
> 2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or

---

[4] Normally a court reviews the decision of the BIA. If the BIA adopts the IJ's opinion without writing separately, it is the IJ's opinion which is reviewed. <u>Abdulai v. Ashcroft</u>, 239 F.3d 542, 549 n. 2 (3d Cir. 2001)("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.")

mass violations of human rights.
United Nations Convention Against Torture, article 3.[5]

Unlike the asylum and withholding of removal provisions, CAT regulations do not require that the reason for the torture fall within one of the five categories of race, religion, nationality, membership in a particular social group, or political opinion. The applicant must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 CFR § 208.16(c)(2). In sum, CAT relief imposes the same objective probability burden as the statutory withholding (*i.e.* withholding under 8 U.S.C. § 1231(b)(3)), and also requires proof of "torture," or extreme infliction of pain.[6]

---

[5]     Section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"),Pub.L. 105-277, 112 Stat. 2681, 2681-821, provides that a court may review a denial of withholding/deferral under the CAT as part of a review of a final order of removal.

[6]     "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a

Immigration Judge Sease found that Sackie had not been tortured before he left Liberia, and that for various reasons he was not likely to be tortured upon his return (Judge Sease's rationale is set out at length in Exhibit 2).

Sackie's argument to this Court is that Judge Sease got it wrong, and that he really did establish the likelihood of persecution and torture.

The government responds that a factual dispute about refugee status is not reviewable in a habeas proceeding. The purpose of a habeas petition is to correct errors of law, and not resolve factual disputes. That fact, combined with the considerable discretion accorded to the Attorney General in refugee matters, precludes review of Sackie's contentions by this Court. Gutierrez-Chavez v. INS, 298 F.3d 824, 829-30 (9th Cir. 2002); Carranza v. INS, 277

---

person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiesce of a public official or other person acting in an official capacity." 8 CFR § 208.18(a)(1) (2000).

F.3d 65,71 (1st Cir. 2002)("Federal courts retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated"). And see Sulaiman v. Attorney General, 212 F.Supp.2d 413, 416 (E.D.Pa. 2002)(DuBois, S.J.) ("[o]nly questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited").[7]

---

[7] Section 1252 of Title 8 guides the adjudication of petitions for review in the courts of appeals. Subsection 1252(b)(4) says:
(4) Scope and standard for review

Except as provided in paragraph (5)(B)--
(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based,
*(B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary,*
(C) a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law, and
*(D) the Attorney General's discretionary judgment whether to grant relief under section 1158(a)* [regarding asylum] *of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion.*

B.    Petitioner"s Claim Of Unlawful Detention
      Is Barred by the doctrine of Res Judicata

Sackie complains that he has been detained for over three years, and that that detention is unlawful. The detention results, of course, from Sackie's determination to resist deportation.  Sackie raised the identical claim in a habeas petition to Judge Van Antwerpen filed on November 18, 2002.[8]  Judge Van Antwerpen dismissed Sackie's petition by order dated December 10, 2002 (attached as exhibit 4).

The government also notes that, as of February 7, 2003, Sackie's removal order is "final" and that he is no longer detained under 8 U.S.C. § 1226(a). The Supreme Court has confirmed that six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances. Zadvydas v. Davis, 533 U.S. 678, 701, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In Zadvydas, the Supreme Court prescribed the six-month detention period "for the sake of uniform administration in the federal courts." Id. This six-month period thus must have expired at the time the § 2241 petition is filed in order to state a

_____

8 U.S.C. § 1252(b)(4) (2003)(emphasis added).

[8]    Docketed at 2:02-CV-08530-FVA.

-12-

claim of unlawful post-order detention under <u>Zadvydas</u>.

<u>Akinwale v. Ashcroft</u>, 287 F.3d 1050, 1050 (11th Cir. 2002).

      Apart from Judge Van Antwerpen's order, Sackie has been detained for only two of the presumptively reasonable six months. His claim of unlawful detention should de rejected.

III. <u>CONCLUSION</u>

      For the foregoing reasons, Sackie's habeas petition and stay application should be denied.

                  Respectfully,

                  PATRICK L. MEEHAN
                  United States Attorney

_____   _____
                  VIRGINIA A. GIBSON
                  Assistant United States Attorney
                  Chief, Civil Division

                  _____
                  STEPHEN J. BRITT
                  Assistant United States Attorney

### *Certificate of Service*

I certify hereby that on the  23rd  Day of  April 2003, I personally served or caused to be served the attached Government's Response To Petition For Writ Of Habeas Corpus, addressed to:

>
> Randall Sackie      BCP  3848-01
> Berks County Prison
> 1287 County Welfare Road
>  LEESPORT PA   !9533-9397
>
> Petitioner *pro se*,

by first-class mail service upon petitioner.

_____
STEPHEN  J. BRITT
Assistant United States Attorney
Suite 1250
615 Chestnut  Street
Philadelphia PA      19106-4476
(215) 861-8443
(215) 861-8642   facsimile

-14-