*Sackie v. Ridge*
No. 2:02-CV-03705-JCJ

# Exhibit I

**U.S. Department of Justi**                    Decision c      : Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A44 680 600 - York                          Date:

In re: RANDALL SACKIE                                   APR - 1 2002

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Sandra Greene, Esquire

ON BEHALF OF SERVICE:      Russell A. Ezolt
                           Special Assistant to the Regional Counsel

CHARGE:

    Notice:  Sec.    237(a)(2)(A)(i), I&N Act [8 U.S.C. § 1227(a)(2)(A)(i)] -
                     Convicted of crime involving moral turpitude

             Sec.    237(a)(2)(A)(ii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(ii)] -
                     Convicted of two or more crimes involving moral turpitude

             Sec.    237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                     Convicted of aggravated felony


APPLICATION:  Asylum, withholding of removal


    The Immigration and Naturalization Service (the "Service") appeals from an Immigration
Judge's April 26, 2001, decision granting the respondent asylum under section 208 of the
Immigration and Nationality Act, 8 U.S.C. § 1158 and withholding of removal under section
241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3). The appeal will be sustained, the Immigration Judge's
decision will be vacated and the record of proceeding will be remanded to the Immigration Judge
for further proceedings consistent with this opinion and for the entry of a new decision.

    The respondent, a native and citizen of Liberia, was admitted to the United States on May 19,
1995, as an immigrant. On June 18, 1998, he was convicted of receiving stolen goods, in violation
of section 609.53 subsection 1 of the Minnesota Criminal Statutes. On November 12, 1998, he was
convicted of giving a false name to police, in violation of section 609.506 subsection 1 of the
Minnesota Criminal Statutes. On June 21, 1999, the respondent was convicted of giving false
information to a police officer, in violation of section 609.506 of the Minnesota Criminal Statutes.
The case was subsequently dismissed. On August 16, 1999, the respondent was convicted of
receiving stolen property, in violation of section 2913.51 of the Ohio Revised Code. On August 26,

A44 680 600

1999, the respondent was convicted of receiving stolen property and theft of property lost, mislaid or delivered by mistake, in violation of title 18 sections 3925 and 3924, respectively, of the Pennsylvania Consolidated Statutes. On April 10, 2000, the respondent was convicted of access device fraud, in violation of title 18 section 4106 of the Pennsylvania Consolidated Statutes.

The Service argued below that the respondent's access device offense was a theft offense aggravated felony, as defined in section 101(a)(43)(M)(i) of the Act, 8 U.S.C. § 1101(a)(43)(M)(i). The Immigration Judge determined that there is a distinction in the Act and Pennsylvania law between theft and fraud and that the Service could not prove fraud, since the respondent's crime did not result in a loss of $10,000. *See* section 101(a)(43)(G) of the Act. He therefore concluded that the respondent was not convicted of an aggravated felony (I.J. at 8).

In its appeal brief, the Service does not argue that the respondent is precluded from relief by his alleged aggravated felony conviction. The Service instead argues that the respondent has failed to establish that he is a refugee as defined in section 101(a)(42)(A) of the Act and that his asylum and withholding applications should be denied as a matter of discretion, as a result of his criminal behavior. Accordingly, we will deem the Service's aggravated felony argument as waived on appeal.

The respondent's uncontroverted testimony indicates that at the age of 14, he and other able-bodied villagers was kidnaped at gunpoint by Independent National Patriotic Front of Liberia ("INPFL") rebels and taken to their training camp. He witnessed the shootings of several individuals who resisted being taken away. The respondent explained that he was selected to participate in the Marines, a group that was sent to sweep newly-captured areas, protect high ranking commanders and "commit torture and do every evil stuff" (Tr. at 84). The respondent's arm and back were cut as an initiation rite. He was trained to use a machine gun for 2 weeks and was told that the group was going to fight against the government. The respondent admitted that he was ordered to kill women and children 2 or 3 times. If he did not obey these orders, both he and the intended victims would have been shot. He witnessed shootings and deadly beatings on a daily basis. The respondent explained that he and the other children were able to commit these acts because cocaine was regularly placed in their food and they were frequently given marijuana and alcohol. The respondent averred that at the age of 15 or 16, he witnessed the kidnaping and murder of Samuel Doe, the previous president, by the INPFL. The respondent stated that Doe's ear and genitals were cut and he subsequently bled to death. The respondent served with the INPFL until 1994, when a cease fire was enacted.

In order to establish eligibility for asylum under section 208(a) of the Act, an alien must demonstrate that he is a "refugee" as defined under section 101(a)(42)(A) of the Act. *See* section 208(a) of the Act; 8 C.F.R. § 208.13; *see also INS v. Elias-Zacarias*, 502 U.S. 478 (1992); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987). Section 101(a)(42)(B) of the Act, provides that "[t]he term 'refugee' does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 101(a)(42)(B) of the Act, 8 U.S.C. § 1101(a)(42)(B); *see also Matter of McMullen*, 19 I&N Dec. 90 (BIA 1994). In order to establish "participation" or "assistance," personal active assistance or

2

A44 680 600

participation in persecutorial acts must be established. *See Fedorenko v. United States*, 449 U.S. 490, 512-513 n.34 (1981) (noting that personal animosity toward civilians not required to show assistance or participation in persecutorial acts). "Mere membership in an organization, even one which engages in persecution, is not sufficient to bar one from relief, but only if one's action or inaction furthers that persecution in some way. It is the objective effect of an alien's actions which is controlling." *Matter of Rodriguez-Majano*, 19 I&N Dec. 811, 814-815 (BIA 1988). However, activities directly related to civil war are not considered persecution. *Id.* An identical provision exists to prohibit persecutors from qualifying for withholding of removal. *See* section 243(h)(2)(A) of the Act, 8 U.S.C. § 1253(h)(2)(A).

Based upon our careful review of the record and the parties' contentions on appeal, we agree with the Immigration Judge's conclusion that the respondent did not participate or assist in the persecution of others on account of one of the statutorily enumerated grounds. According to the evidence contained in the record, the civil war resulting from tribal and factional fighting in Liberia, lasted for over 7 years and resulted in thousands of deaths. The warring factions consisted predominantly of armed fighters, many as young as ten years old, with little or no formal military training. *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Liberia- Profile of Asylum Claims and Country Conditions* at 1-2 (June 1998) (Exh. 2J). UNICEF estimates that some 15,000 to 20,000 children directly participated in the war. *See* Human Rights Watch, *Liberia Emerging from the Destruction* at 30 (November 1997) (Exh. 13(4)). Many of these children saw or participated in brutally violent acts, were forced to kill or maim, were exposed to fighting and were themselves victimized and beaten. *Id.* Accordingly, we cannot conclude that the respondent participated in the persecution of others. *See Matter of Rodriguez-Majano, supra.*

However, we disagree with the Immigration Judge's conclusion that the respondent met his burden of establishing past persecution and a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); *Matter of S-A-*, Interim Decision 3433 (BIA 2000); 8 C.F.R. § 208.16(b)(2); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *INS v. Stevic*, 467 U.S. 407 (1984). The respondent did not establish a nexus between the aforementioned abuse that he suffered and one of the statutorily-enumerated grounds, since drafting and recruiting a child soldier, although a means of achieving a political goal, is not a form of persecution directed at the child based upon a statutorily-enumerated ground. *See Matter of Rodriguez-Majano, supra*, at 815. The respondent was abused as a result of the civil strife that occurred in Liberia and the fighting factions' indiscriminate need for combatants, rather than as a result of a cognizable ground under the Act.

We also find that the respondent did not meet his burden of establishing a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Liberia Country Report on Human Rights Practices for 1999* (Feb. 26, 2000) (Exh. 2I)[hereinafter 1999 *Country Report*], indicates that the Government's human rights record remains poor, and there were serious problems in many areas. Security forces committed many extrajudicial killings. *Id.* at 2. However, the Country Report does not indicate that the respondent would be at greater risk of persecution based upon one of the statutorily-enumerated grounds than any other Liberia citizen.

3

A44 680 600

Inasmuch as the respondent has not satisfied the lower burden of proof required for asylum, we find that he has not satisfied the clear probability standard of eligibility for withholding of removal. *See INS v. Stevic*, 467 U.S. 407 (1984).

We also note that even if the respondent had met his burden of proof for asylum, the crimes he committed in the United States mandate a denial of asylum in the exercise of discretion. *Matter of Kasinga*, 21 I&N Dec. 357 (BIA 1996); *Matter of Pula*, 19 I&N Dec. 467 (BIA 1987). The crimes were theft crimes that amount to crimes involving moral turpitude. Although the Service chose not to pursue the aggravated felony charge against the respondent on appeal, his last credit card conviction may indeed be an aggravated felony. The respondent is now 26 years of age, and began his series of theft-related crimes after he became an adult. At least one of these convictions resulted in a sentence of incarceration. Accordingly, we find that the respondent is statutorily barred from asylum and is not deserving of a grant of asylum as a matter of law and in discretion.

However, the Immigration Judge did not address the respondent's application for relief under the Convention Against Torture ("CAT") although he expressly applied for it and we find that the record of proceeding contains sufficient evidence of a colorable claim to CAT protection. 8 C.F.R. §§ 208.16-18 (2001). Accordingly, the Service's appeal is sustained, the Immigration Judge's order is vacated, and the record is remanded to the Immigration Judge for further proceedings consistent with this opinion.

ORDER:   The Service's appeal is sustained.

FURTHER ORDER:   The Immigration Judge's order granting asylum and withholding of removal to the respondent is vacated.

FURTHER ORDER:   The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

_____
FOR THE BOARD

4

# Exhibit  II

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
York, Pennsylvania

File No.  A 44 680 600                    October 3, 2002

In the Matter of

RANDALL SACKIE,                )        IN REMOVAL PROCEEDINGS
                               )
              Respondent       )

CHARGE:        Proceedings on remand from the Board of
               Immigration Appeals in a decision dated April 1,
               2002 for consideration of a claim for protection
               pursuant to Article III of the Convention Against
               Torture.


APPLICATION:

ON BEHALF OF RESPONDENT:        ON BEHALF OF SERVICE:

Pro se                          Jeffrey Bubier
                                Assistant District Counsel


                ORAL DECISION OF THE IMMIGRATION JUDGE

I.   HISTORY OF THE CASE

         The respondent is a male, native and citizen of

Liberia.  He was previously granted, following a hearing on the

merits of his application for asylum, withholding and protection

pursuant to the provisions of the Convention Against Torture.  He

was granted asylum by another immigration judge.  That decision

was appealed to the Board of Immigration Appeals.  On April 1st

of the year 2002 the Board of Immigration Appeals vacated the

immigration judge's decision granting the respondent asylum and

by extension found that the respondent was ineligible to apply

for withholding of removal since that requires a higher standard,

rb

but remanded the case for consideration of the respondent's application for protection pursuant to the provisions of Article III of the Convention Against Torture. A hearing on his application for that relief was held today. The record in this case consists of the following documentary evidence in addition to the documentary evidence that is previously in the record as a result of the first hearing.

II.  DOCUMENTARY EVIDENCE

Exhibit 1R the remand order from the Board of Immigration Appeals dated April 1, 2002. Exhibit 2R, the form I-589 with the amendments, it was filed in the previous proceeding. Exhibit 3R is a exhibit package tabbed 1 through 21. Exhibit 4R, the Immigration and Naturalization Service Notice of Intent to offer evidence, tab K for 2001 country reports by the State Department released in March of 2002. Exhibit 5R, a letter from the respondent.

III.  STATEMENT OF THE FACTS/SUMMARY OF THE TESTIMONY

Respondent testified that he is 28 years old. He came to the United States in 1995. He claims that he was born in Liberia and began elementary school there. His parents, shortly after his birth, when he was still apparently a toddler came to the United States. The respondent was left in the custody in care of his aunt. He went to school in Liberia for about six or seven years. He said he was eventually sent to boarding school until about the seventh grade. He said in December of 1999 civil war broke out in Liberia and he was taken from school. This is,

A 44 680 600                    2                    October 3, 2002

rb

the court notes, somewhat at odds with his own statement that he
had apparently stopped going to school of his own volition and
was living on the streets.  He said that he was with his aunt and
other members of his family in 1999 at a south family compound
outside of Monrovia when a rebel group captured the area.  The
rebel group went through picking out young boys and put them in a
truck.  They were taken to a training base.  This rebel group was
initially that of Charles Taylor.  He and other young boys were
taken to a training base near Monrovia and went through a period
of training of about two weeks.  He said that he was a child
soldier attacking mostly government soldiers mostly in Monrovia
but he also attacked civilians.  The respondent claims that he
doesn't really know how many people he might have killed but that
he did simply what he was told.  He was designated a marine.  He
said that as part of his becoming a marine that he went through a
form of an initiation right in which he received certain scars on
his body.  His period as a soldier ended when the ECOMO, a West
African organization sent in troops which disbanded the rebel
group that he was fighting with which was now led by an
individual named Prince Johnson.  This occurred in 1993.  The
respondent testified that he subsequently went to Conakry,
Guinea.  He contacted his father in the United States and his
father had send him money.  He stayed in Conakry until sometime
in 1994 when he returned to Liberia and lived in Monrovia.  He
initially said he didn't work and didn't go to school during this
period of time, however, when cross-examined by the Service he

A 44 680 600                    3                    October 3, 2002

rb

said that he admitted that he did in fact go to the AME Zion
Academy but he said that this was a preschool so he didn't think
it counted.  He also said at some point that he was a member of
the IPSL faction until he left Liberia in 1995.  While he was
living in Monrovia from '94 through '95 prior to coming to the
United States, he apparently experienced no problems.  He said,
however, that this is not indicative that if he were sent back to
Liberia that he doesn't believe he would survive for one day
because now that Charles Taylor is in power he believes that he
would be identified as a member of the Prince Johnson group
because of the marks on his body and that he would be killed or
subject to torture.

IV.  STATEMENT OF THE LAW

        To be eligible for protection pursuant to Article III
of the Convention Against Torture an alien must establish that it
is more likely than not that he would be subject to torture by or
at the instigation of or with the consent or acquiescence of a
public official or a person acting in an official capacity.  8
C.F.R. 208.18(a)(1).  In Re J-E- 23 I&N Dec. 291 (BIA 2002).  In
Re S-C 22 I&N Dec. 1306 (BIA 2000).

        Torture is defined as any act by which severe pain or
suffering, whether physical or mental, is intentionally inflicted
on a person.  See 8 C.F.R. 208.18(a)(1).  The severe pain or
suffering must be inflicted on the applicant or a third person
for such purposes as (1) obtaining information or a confession;
(2) for punishing for an act committed or suspected of having

A 44 680 600                        4                    October 3, 2002

rb

been committed; (3) for intimidation or coercion; (4) for any reason based on any discrimination of any kind. In addition, in order to constitute torture the act must be directed against a person in the offender's custody or physical control. Furthermore, as stated previously, the pain or suffering must be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. Acquiescence requires that the public official had prior awareness of the activity and therefore breached his or her legal responsibility to intervene to prevent such activity. Torture is an extreme form of cruel and inhuman treatment and does not include pain or suffering arising from lawful sanctions. The applicant for withholding of removal under the Torture Convention bears the burden of proving that it is more likely than not he or she would be tortured if removed to the proposed country of removal. See 8 C.F.R. 208.16(c)(2). As with asylum, this burden can be established by testimony without corroboration if the testimony is credible. In assessing whether the applicant has satisfied the burden of proof the court must consider all evidence relevant to the possibility of future torture including evidence of past torture inflicted upon the applicant, evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured and evidence of gross, flagrant or mass violations of human rights within the country of removal or other relevant information of conditions in the country of removal.

A 44 680 600                         5                    October 3, 2002

rb

      In the instant case the respondent has alleged in his form I-589 and before this court that he fears torture if he were returned to Liberia. He fears that he would be tortured by or at the hands of the Charles Taylor government. This did not come out as evidence in the record including that submitted for this hearing on remand as well as information previously submitted to the court as part of the record for the previous hearing. After due and careful consideration, based on respondent's testimony and the evidence of record, the court finds that the respondent has not shown that he is more likely than not to be tortured if he was removed to Liberia. The court has carefully considered the respondent's testimony that he was a child soldier. While forcing youngsters to be soldiers shocks the human conscious, it is not a form of torture. The respondent would apparently rely on upon the initiation right as evidence of past torture. The court finds it is not in this instance. The court notes that young men and indeed young women may go through a variety of initiation rights including such activities as tattooing and body piercing that do not in fact constitute torture. While the court is well aware of the fact that Liberia is a country that has been torn by civil war almost the last 20 years, that in and of itself is not a basis to conclude that the respondent would be subject to torture if he were returned to Liberia. The respondent has a decision when he is returned to Liberia to refrain from engaging in any more on conflict as he did in '94 and '95 when he apparently went back to Monrovia and was able to live there

A 44 680 600                           6                    October 3, 2002

rb

without incident while he was awaiting his visa in the United States.

Accordingly, the court finds that the respondent has failed to meet his burden of establishing that he would be subject to torture if he should be removed to Liberia. Accordingly, the following order is entered.

<u>ORDER</u>

IT IS ORDERED that the respondent's application for protection pursuant to Article III of the Convention Against Torture be and the same is hereby denied.

IT IS FURTHER ORDERED that the respondent be removed to his home country of Liberia.

DONE AND ORDERED this 3rd day of October, 2002.



_____     _____
GRACE A. SEASE
Immigration Judge

A 44 680 600                                7                        October 3, 2002

CERTIFICATE PAGE

I hereby certify that the attached proceeding before

JUDGE GRACE A. SEASE, in the matter of:

RANDALL SACKIE

A 44 680 600

York, Pennsylvania

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.


RITA BOZEK


Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland  20852
(301) 881-3344


November 20, 2002
(Completion Date)

# Exhibit  III

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:    A44-680-600 ~ York

Date: FEB 7 - 2003

In re: SACKIE, RANDALL

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Pro se

ON BEHALF OF SERVICE: Jeffrey Bubier, ADC

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. See 8 C.F.R. § 3.1(e)(4).

FOR THE BOARD

Exhibit 2 A

# Exhibit  IV

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RANDALL SACKIE,
    Petitioner

v.

                       :    Civil No. 02-8530

IMMIGRATION & NATURALIZATION
SERVICE,
    Respondent

### ORDER

    AND NOW, this 10th day of December, 2002, upon consideration of Petitioner Randall Sackie's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, filed November 18, 2002, and the government's Response to Petition for Writ of Habeas Corpus, filed December 3, 2002, it is hereby ORDERED that the petition is DENIED.[1]

                BY THE COURT:

                Franklin S. Van Antwerpen, U.S.D.J.

---

[1]    Petitioner Sackie has filed this petition pro se, claiming that his detention under Section 236(c) of the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1226(c), violates constitutional due process. Sackie is a native and citizen of Liberia who entered the United States in 1995 and acquired permanent residence thereafter. Before entering the United States, according to his own testimony, he was kidnapped at age fourteen by Liberian rebels, trained, and ordered, on two or three occasions, to kill women and children. (Government's Response, Ex. 1, Board of Immigration Affairs decision, 2). Since arriving in the United States, he has been convicted of theft, receiving stolen property, giving a false name to police, and access device fraud in Minnesota, Ohio, and Pennsylvania. Id. We consider Sackie's petition pursuant to 28 U.S.C. 2241(c)(3).

    The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") included a new version of § 236(c), the provision that Sackie asserts is now at issue. Section 236(c), codified at 8 U.S.C. § 1226(c), is a mandatory pre-removal detention provision directed at criminal aliens. In September of 2001, a panel of the Third Circuit held that § 236(c) of the INA was unconstitutional. Patel v. Ashcroft, 275 F.3d 299, 314 (2001). More recently, the Supreme Court has scheduled argument on the constitutionality of § 236(c) on January 15, 2003 in a case called Demore v. Kim, No. 01-1491.

    The constitutional status of § 236(c) is not relevant to Sackie's detention however, because he is not under mandatory detention pursuant to § 236(c); instead, he is detained as a matter of discretion under § 236(a). 8 U.S.C. § 1226(a). Patel does not render his detention unconstitutional; that decision mandates custody hearings before an immigration judge ("IJ"), but does not mandate the release that Sackie seeks. See 275 F.3d at 311. Sackie did in fact have a hearing before the IJ in February 2002. Sackie himself recognizes the occurrence of that hearing in the first paragraph of his petition. Therefore no due process violation has occurred.

    Sackie's second contention, that the IJ's custody decision is a final determination, has no merit. See 8 CFR § 240.15 ("an appeal shall lie from the determination of an immigration judge to the Board of Immigration Appeals...."). Accordingly, we deny his petition because exhaustion has not been achieved.