IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
RANDALL SACKIE                      : CIVIL ACTION
                                    :
    vs.                             :
                                    : NO. 02-3705
JOHN ASHCROFT, U.S. ATTORNEY        :
GENERAL, KENNETH ELWOOD,            :
DISTRICT DIRECTOR and U.S.          :
IMMIGRATION AND NATURALIZATION      :
SERVICE, PHILADELPHIA DISTRICT      :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                              **June         , 2003**

This case has been brought before the Court on Petition of Randall Sackie for a writ of habeas corpus and on his petition for emergency stay of removal pending this Court's adjudication of his habeas petition. For the reasons which follow, the petitions shall be granted.

### History of the Case

Randall Sackie is a 27-year-old native and citizen of Liberia who emigrated to the United States in May, 1995 and was admitted as a permanent resident on the basis of a petition from one of his parents, who had previously acquired U.S. citizenship. On July 21, 2000, the Philadelphia office of the Immigration and Naturalization Service ("INS") served Petitioner with a Notice to Appear, which is an immigration charging document by which removal proceedings are instituted. Specifically, the Notice to

Appear alleged that Mr. Sackie had been convicted, (1) on June 18, 1998 of receiving stolen property in Minnesota; (2) on November 12, 1998 of giving a false name to the police in Minnesota; (3) on June 21, 1999 of giving false information to a police officer in Minnesota; (4) on August 16, 1999 of receiving stolen property in Ohio; (5) on August 26, 1999 of receiving stolen property and theft of property lost in Pennsylvania; and (6) on April 10, 2000 of access device fraud in Pennsylvania. The Notice to Appear further charged that Petitioner was deportable because he had been convicted of crimes involving moral turpitude and an aggravated felony pursuant to 8 U.S.C. §1227(a)(2)(A)(i), (ii), and (iii).

In response thereto, Petitioner denied that he had been convicted of an aggravated felony and sought asylum, withholding of removal and protection under the U.N. Convention Against Torture ("CAT").  Petitioner's habeas petition asserts that he had been forcibly recruited as a child soldier in 1990 by the "marine" arm of the National Patriotic Front of Liberia ("NPFL") under the leadership of Charles Taylor, that he and his fellow recruits were regularly abused and given drugs such as cocaine to make them high and less fearful of the dangerous situations in which they were being placed, and that he was ordered, under direct threat to his own life, to kill others.  Later in 1990, the marine group in which Petitioner had been placed broke away

from Charles Taylor under the direction of one Prince Johnson, renamed itself the Independent National Patriotic Front of Liberia ("INPFA") and began fighting against Taylor.  According to Petitioner, the abuse, drugged food and forced killing continued in the same fashion as it had when he was one of Charles Taylor's marines.

In 1993, a West African organization called the ECOMOG sent troops into Libera to disarm the rebel group that the petitioner was fighting with.  Fearing for his life, Mr. Sackie fled to Conakry, Guinea and from there, with the help of the United Nations, contacted his father in the U.S.  At the direction of his father, who had initiated a family petition, Mr. Sackie returned to Liberia in 1994 to await his visa.  He subsequently was granted status as a legal permanent resident pursuant to the family petition and emigrated to the U.S. in May, 1995.  Charles Taylor was elected President of Liberia in 1997 and remains in power to this date.  Petitioner argues (as he did before two Immigration judges and two panels of the Board of Immigration Appeals) that if he were returned to Liberia, he would more likely than not face torture by or with the acquiescence of the Liberian government because of his prior membership in the marines/INPFL, that he is easily identified as an INPFL member because he has extensive body markings, scars and tatoos, and that he is therefore entitled to a deferral of his removal under

the CAT.[1]

## **Standard of Review**

It is now clear that despite the limitations on federal court review of executive branch deportation decisions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), federal courts retain subject matter jurisdiction under 28 U.S.C. §2241 to decide habeas corpus petitions by criminal aliens subject to deportation.  Ins v. St. Cyr., 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); Zadvydas v. Davis, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); Chmakov v. Blackman, 266 F.3d 210, 213 (3d Cir. 2001). Although the Third Circuit has yet to make a definitive statement on the standard of review of such petitions, most of the courts in this circuit are in agreement that habeas review is limited solely to questions of statutory and constitutional law; review of factual or discretionary issues is prohibited. See: Da Rosa Silva v. INS, Civ. A. No. 02-CV-8903, 2003 WL 21054365 (E.D. Pa. May 8, 2003); Edwards v. INS, Civ. A. No. 03-286, 2003 U.S. Dist. LEXIS 6594 (E.D. Pa. March 31, 2003); Bamba v. Elwood, 252

---

[1] It is not clear from the very limited record now before this Court when the petitioner was taken into custody, but it appears from the petition for writ of habeas corpus filed on June 11, 2002 in this case and the habeas petition filed on November 18, 2002 in Case No. 02-CV-8530 that he has been in custody since at least early 2002 at the Berks County Prison in Leesport, Pennsylvania.

F.Supp.2d 195, 199 (E.D. Pa. 2003); <u>Builes v. Nye</u>, 239 F.Supp.2d 518, 523 (M.D. Pa. 2003); <u>U.S. ex. rel. Zhelyatdinov v. Ashcroft</u>, Civ. A. No. 02-4318, 2002 WL 31957526 (E.D. Pa. Dec. 27, 2002); <u>Sulaiman v. Attorney General</u>, 212 F.Supp.2d 413, 416 (E.D. Pa. 2002), *aff'd w/o opinion*, ___F.3d___, No. 02-3186, 2003 U.S. App. LEXIS 6788 (March 26, 2003).

## **Discussion**

As noted, by his habeas petition Mr. Sackie seeks asylum, withholding of removal and/or protection under the UN Convention Against Torture (CAT).

Pursuant to 8 U.S.C. §1158(b)(1), the Attorney General has discretion to grant asylum to an alien applicant if he determines that the alien is a refugee within the meaning of §1101(a)(42)(A). Under this section, "[t]he term 'refugee' means any person who is outside any country of such person's nationality, or in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §1101(a)(42)(A). However, §1158(b)(1) does not apply if the Attorney General determines, *inter alia*, that the alien ordered, incited, assisted, or

5

otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion, or was convicted of a particularly serious crime and constitutes a danger to the community of the United States. 8 U.S.C. §1158(b)(2)(A)(i), (ii). "For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. §1158(b)(2)(B)(i). It is the applicant for asylum who bears the burden of establishing that he or she falls within the statutory definition of "refugee." <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 482 (3d Cir. 2001), citing, 8 C.F.R. §208.13(a) and <u>Balasubramanrim v. INS</u>, 143 F.3d 157, 161 (3d Cir. 1998).

 Withholding of removal is properly granted "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion" unless "the alien ordered, incited, assisted or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group or political opinion" or is a danger to the community of the United States by virtue of having been convicted of a particularly serious crime. 8 U.S.C. §1231(b)(3)(A),(B)(i), (ii). The burden of proof is on the

applicant for withholding of removal to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 C.F.R. §208.16(b).  Thus, withholding of removal involves considerations very similar to those applicable to requests for asylum.[2]

The Convention Against Torture, in turn, allows a deportable alien to apply for relief from removal if an "immigration judge determines that the alien is more likely than not to be tortured[3] in the country of removal."  Edwards, 2003 U.S. Dist. LEXIS at *7, quoting 8 C.F.R. §208.16(c)(4).[4]  Again, the burden of proof

---

[2]   Petitioner appears to be using "deferral of removal" interchangeably with his claim for "withholding of removal."  In contrast to withholding of removal, which is an absolute prohibition against removal, deferral of removal is a temporary condition subject to further review by the INS and immediate discretionary termination by the Attorney General.  It only guarantees deferral from deportation to the specific country where the alien is likely to be tortured.  Sulaiman, 212 F.Supp.2d at 415, n.3.

[3]   Under 8 C.F.R. §208.18(a)(1), "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

[4]   As Judge Yohn noted in footnote 7 in Edwards,

"The United Nations Convention Against Torture and Other

is on the applicant whose testimony may, if credible, be sufficient to sustain the burden without corroboration.  8 C.F.R. §208.16(c)(2).  In assessing whether it is more likely than not that the alien would be tortured in the proposed country of removal, all evidence relevant to that possibility shall be considered including evidence of past torture inflicted upon the applicant, evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured, and evidence of gross, flagrant or mass human rights violations in the country of removal.  8 C.F.R. §208.16(c)(3). In the event that the immigration judge should determine that the alien is more likely than not to be tortured in the country of removal, protection under the CAT will be granted either in the form of withholding or deferral of removal.  8 C.F.R. §208.16(c)(4).  Unless the alien is subject to mandatory denial of withholding of removal (as is the case where the alien has been convicted of a particularly serious crime), he shall be

---

      Cruel, Inhuman or Degrading Treatment or Punishment was adopted on December 10, 1984.  24 I.L.M. 535 (1985).  The United States Senate ratified the treaty on October 21, 1994; the treaty became effective one month later.  34 I.L.M. 590, 591 (1995).  Congress gave effect to the treaty as part of the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L.No. 105-277, Div.G., Title XXII, 112 Stat. 2681, 2681-2821 (Oct. 21, 1998)...(other citations omitted). In 1999, the appropriate administrative agencies passed regulations harmonizing the revised immigration rules with the provisions of the Convention Against Torture.  <u>See</u>, <u>e.g.</u>, 8 C.F.R. §§208.16--208.18.

granted withholding; otherwise, his removal shall be deferred. 8 C.F.R. §208.16(c)(4), (d).

The original immigration judge hearing Mr. Sackie's case found that he did not participate or assist in the persecution of others on account of one of the statutorily-enumerated grounds and granted him asylum under Section 208 of the Immigration and Nationality Act, 8 U.S.C. §1158 and withholding of removal under Section 241(b)(3), 8 U.S.C. §1231(b)(3). He likewise found that Petitioner was **not** convicted of an aggravated felony. The Immigration and Naturalization Service (INS) appealed the original IJ's decision on the grounds that Petitioner had failed to establish that he is a refugee within the meaning of the Act and that his asylum and withholding claims should be denied as a matter of discretion as a result of his criminal convictions. It did not argue that Mr. Sackie was precluded from relief by his convictions and, in fact, the BIA deemed the INS' argument that these convictions equated to aggravated felonies as having been waived on appeal. While affirming the conclusion that Petitioner did not participate or assist in the persecution of others, the Board of Immigration Appeals (BIA) did not agree with the IJ's finding that Petitioner here had met his burden of proving past persecution and a well-founded fear of future persecution. Further, the BIA found that even if he had, the crimes which Mr. Sackie committed in the U.S. mandated a denial of asylum in the

9

exercise of discretion. Given that the IJ had granted Petitioner asylum and did not therefore consider his application for relief under the CAT, the BIA vacated the grant of asylum but remanded the matter for consideration of the CAT claim. On remand, a different IJ found that Mr. Sackie had not shown that he was more likely than not to be tortured if returned to Liberia and therefore denied his application for relief under CAT. The BIA affirmed this decision *per curiam* without opinion.

In now reviewing the record before us under the limited habeas standard of review articulated above, we cannot find any constitutional or statutory error in the BIA's decision that Petitioner is not a refugee within the meaning of the Immigration and Nationality Act, 8 U.S.C. §1101, *et. seq.* We therefore deny Petitioner habeas relief based on his asylum claim. We do find, however, that the IJ and concomitantly, the BIA did commit constitutional and statutory error in considering Mr. Sackie's CAT claim and in finding that he failed to meet his burden of proving that he was tortured or is more likely than not to be tortured if he were deported back to Liberia. Indeed, here there is ample record evidence that Liberia is and has been for more than the last decade a very unstable country torn apart by civil war, that the present leader, Charles Taylor is himself a warlord who came to power as the result of the successful fighting of his own group of rebels, and that the ongoing battles

between various groups of rebel fighters have resulted in the death and displacement of millions of innocent civilians, many of whom have fled and continue to flee into the neighboring countries of Sierra Leone, Guinea and Ivory Coast.  It is also clear that many of these rebel groups seize young children and force them into their ranks to fight.  Petitioner's testimony that he was just one such child soldier, was not controverted and was accepted by the IJ and the BIA and this Court has no basis to question or doubt the veracity of it.  Borrowing from the findings made in the April 1, 2002 Decision of the BIA,

> The respondent's uncontroverted testimony indicates that at the age of 14, he and other able-bodied villagers was kidnaped at gunpoint by Independent National Patriotic Front of Liberia ("INPFL") rebels and taken to their training camp.  He witnessed the shootings of several individuals who resisted being taken away.  The respondent explained that he was selected to participate in the marines, a group that was sent to sweep newly-captured areas, protect high ranking commanders and "commit torture and do very evil stuff" (Tr. at 84).  The respondent's arm and back were cut as an initiation rite. He was trained to use a machine gun for 2 weeks and was told that the group was going to fight against the government.  The respondent admitted that he was ordered to kill women and children 2 or 3 times.  If he did not obey these orders, both he and the intended victims would have been shot.  He witnessed shootings and deadly beatings on a daily basis.  The respondent explained that he and the other children were able to commit these acts because cocaine was regularly placed in their food and they were frequently given marijuana and alcohol.  The respondent averred that at the age of 15 or 16, he witnessed the kidnaping and murder of Samuel Doe, the previous president, by the INPFL.  The respondent stated that Doe's ear and genitals were cut and he subsequently bled to death.  The respondent served with the INPFL until 1994 when a cease fire was enacted.

As the BIA itself found, Petitioner was kidnaped at gunpoint,

repeatedly threatened with death, had his arm and back cut as part of an initiation rite, and was regularly fed cocaine, alcohol and marijuana.  In finding that Petitioner had failed to meet his burden of proving torture, the IJ and the BIA (*per curiam*) focused exclusively on the physical component of torture, and ignored the possibility that it could arise by virtue of prolonged mental harm.  In so doing, we find that the IJ and BIA apparently disregarded the following portion of Regulation 208.18:

> (a)(4) In order to constitute torture, mental pain or suffering must be prolonged mental harm caused by or resulting from:
>
>> (i) The intentional infliction or threatened infliction of severe physical pain or suffering;
>>
>> (ii) The administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;
>>
>> (iii) The threat of imminent death; or
>>
>> (iv) The threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the sense or personality.

Again, under 8 C.F.R. §208.16(c)(3),

> (3) In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including but not limited to:
>
>> (i) Evidence of past torture inflicted upon the applicant;

>    (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
>    (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
>    (iv) Other relevant information regarding conditions in the country of removal.

Given Mr. Sackie's undisputed and uncontroverted testimony that he was threatened with imminent death on numerous occasions, frequently given mind altering substances and suffered cuts to his back and arms, we must find that he has met his burden of proving that he was tortured in his native country. He has also testified without contradiction that the INPFL fought against the current president and that he bears the distinctive marks and tatoos of an INPFL member. Finally, the recent newspaper and internet articles which petitioner has produced as documentary evidence show that the current government is itself guilty of numerous, heinous human rights violations and that it has virtually no control over the country such that even if it wanted to intervene, it has virtually no power to prevent the crimes against humanity which are currently ongoing throughout the country. Accordingly, we find that Mr. Sackie has sufficiently shown that he was tortured in the past and that he is more likely than not to suffer torture or death in the future if he were returned at this time to his native country. We therefore conclude that Petitioner is entitled to habeas relief in the form

13

of a withholding of removal under the CAT.[5]

An order follows.

---

[5] In this regard, 8 C.F.R. §208.16(c)(4) provides in relevant part that,

> "If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture.  Protection under the Convention Against Torture will be granted either in the form of withholding of removal or in the form of deferral of removal.  An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal under paragraphs (d)(2) or (d)(3) of this section.  If an alien entitled to such protection is subject to mandatory denial of withholding removal under paragraphs (d)(2) or (d)(3) of this section, the alien's removal shall be deferred under §208.17(a)."

Given that the INS has not sought to disturb the findings of the original IJ that Mr. Sackie was not convicted of an aggravated felony or that he did not participate or assist in the persecution of others, he remains eligible for relief in the form of withholding of removal.  Of course, nothing in §208.16 or §208.17 prevents the INS from removing the Petitioner to a country other than Liberia.  8 C.F.R. §208.16(f).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
RANDALL SACKIE                        : CIVIL ACTION
                                      :
     vs.                              :
                                      : NO. 02-3705
JOHN ASHCROFT, U.S. ATTORNEY          :
GENERAL, KENNETH ELWOOD,              :
DISTRICT DIRECTOR and U.S.            :
IMMIGRATION AND NATURALIZATION        :
SERVICE, PHILADELPHIA DISTRICT        :
```

**ORDER**

AND NOW, this          day of June, 2003, upon consideration of Randall Sackie's Petition for Writ of Habeas Corpus and Petition for Emergency Stay of Removal, it is hereby ORDERED that the Petitions are GRANTED, and Petitioner is DIRECTED to be released from the custody of the Immigration and Naturalization Service.

BY THE COURT:

_____
J. CURTIS JOYNER,        J.